AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

SUBJECT DEVICE 2 LOCATED AT WEST CHESTER TOWNSHIP POLICE DEPARTMENT, WEST CHESTER, OHIO, FURTHER DESCRIBED IN ATTACHMENT A-2.

Case No. **1:26-mj-00928**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2

located in the Southern District of Ohio, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
| --- | --- |
| 18 U.S.C. 2261A | Interstate Stalking |
| 18 U.S.C. 371 | Conspiracy |

The application is based on these facts:

See Attached Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* __________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

____________________
*Applicant's signature*

Special Agent Johnathan Larson, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Facetime video conference *(specify reliable electronic means)*.

Date: 11/13/2026

Stephanie K Bowman
*Judge's signature*

City and state: Cincinnati, Ohio

Stephanie K. Bowman, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A-2

The property to be searched is a cellular telephone assigned call number, [redacted]-2472, with listed subscriber Johnathan Messer, ("SUBJECT DEVICE 2"), whose wireless service provider is T-Mobile SUBJECT DEVICE 2 is currently in law enforcement custody located at the West Chester Township Police Station, which is located in the Southern District of Ohio.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT B

## ITEMS TO BE SEIZED

1. All items and all records, in whatever form, including paper, any other physical form, and any electronic form, that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2261A (Interstate Stalking), and 18 U.S.C. § 371 (Conspiracy) (hereinafter, the SUBJECT OFFENSES), those violations involving Terry MESSER, Johnathan MESSER, and R[redacted] M[redacted] and occurring between January 1, 2026, and present, that is:

a. Records, information, and data relating to the ownership, use, and location of the device during, immediately preceding, and following the trips taken to Utah between approximately March 1 and March 3 of 2026, as well as approximately March 13 and March 17 of 2026, as part of the SUBJECT OFFENSES;

b. Records and information relating to the identity or location of the individuals involved in violating the SUBJECT OFFENSES;

c. For the period of January 1, 2026, through the present, records of communication concerning the SUBJECT OFFENSES by T MESSER, J MESSER, and M[redacted], specifically preparations, plans, coordination, and efforts to conceal the acts necessary to commit the SUBJECT OFFENSES;

d. For the period of January 1, 2026, through the present, photographs relating to the SUBJECT OFFENSES;



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

e. For the period of January 1, 2026, through the present, evidence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

f. For the period of January 1, 2026, through the present, evidence of the lack of such malicious software; evidence indicating how and when the device were accessed or used to determine the chronological context of phone access, use, and events relating to the crime(s) under investigation and to the computer user;

g. For the period of January 1, 2026, through the present, evidence of programs (and associated data) that are designed to eliminate data from the device;

h. For the period of January 1, 2026, through the present, evidence indicating the device user's knowledge and/or intent as it relates to the SUBJECT OFFENSES;

i. For the period of January 1, 2026, through the present, evidence of the times the device was used; passwords, encryption keys, and other access devices that may be necessary to access the device; and

j. evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence;



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

k. contextual information necessary to understand the evidence described in this attachment.

2. Records and information on computers, routers, modems, and network equipment used to connect computers to the Internet that constitute evidence, instrumentalities, or fruits of the commission of the SUBJECT OFFENSES, including

a. Records of Internet Protocol addresses used;

b. Records of Internet activity, including firewall logs, caches, browser history and cookies; “bookmarked” or “favorite” web pages, search items that the user entered into any Internet search engine, and records of user-typed web addresses relating to the SUBJECT OFFENSES.

THE SEIZURE OF DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA AND/OR THEIR COMPONENTS AS SET FORTH HEREIN IS SPECIFICALLY AUTHORIZED BY THIS SEARCH WARRANT, NOT ONLY TO THE EXTENT THAT SUCH DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA CONSTITUTE INSTRUMENTALITIES OF THE CRIMINAL ACTIVITY DESCRIBED ABOVE, BUT ALSO FOR THE PURPOSE OF THE CONDUCTING OFF-SITE EXAMINATIONS OF THEIR CONTENTS FOR EVIDENCE, INSTRUMENTALITIES, OR FRUITS OF THE AFOREMENTIONED CRIMES.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## AFFIDAVIT

I, Johnathan Larson, having been duly sworn, state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the FBI, and as such, I am "an investigative or law enforcement officer of the United States," within the meaning of 18 U.S.C. § 2510(7); that is, I am an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. I have been employed as a Special Agent of the FBI since August 2023. I have attended classes and courses conducted by the FBI and other government agencies regarding the conduct of various criminal activities by persons and/or groups. As a Special Agent with the FBI I have led and supported investigations pertaining to violent crimes on federally recognized Indian Reservations, violent crimes against children, internet crimes against children, threatening communications, drug trafficking, domestic terrorism, and kidnapping, among others.

2. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to in order to seize and conduct a forensic search of a cellular telephone assigned call number 253-252-0269, owned or operated by Johnathan Messer ("SUBJECT DEVICE 1"), as more fully described in Attachment A-1; and a cellular telephone assigned call number [redacted]-2472, owned or operated by R[redacted] M[redacted] ("SUBJECT DEVICE 2"), as more fully described in Attachment A-2, collectively referred to as the "SUBJECT DEVICES." A search of an



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

FBI proprietary database revealed that the service provider for the SUBJECT DEVICES is T-Mobile, a wireless communications service provider.

3. The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of cooperating witnesses; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

4. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. I have set forth only the facts that I believe are necessary to the determination of probable cause to believe that evidence, fruits and instrumentalities of violations of 18 U.S.C. § 2261A (Interstate Stalking), and 18 U.S.C. § 371 (Conspiracy), hereinafter, the "SUBJECT OFFENSES," will be found on the SUBJECT DEVICES.

## THE INVESTIGATION

5. The Federal Bureau of Investigation (FBI), is conducting a criminal investigation of Terry MESSER (hereafter referred to as T MESSER), Johnathan MESSER (hereafter referred to as J MESSER), and Robin M[redacted](hereafter referred to as M[redacted]) regarding possible violations of SUBJECT OFFENSES.

6. The FBI Salt Lake City Division received information from the Bureau of Prisons indicating that inmate T MESSER, who was incarcerated at the Sheridan Federal



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Correctional Institution (FCI), and his son J MESSER were engaged in a plot to abduct, drug, and frame [redacted] (hereafter referred to as VICTIM), in order to extort VICTIM and compel her [redacted] T MESSER [redacted]

7. The BOP provided information including handwritten notes from T MESSER's personal property, electronic communications, and recorded telephone calls, which corroborated the fact that T MESSER and J MESSER planned, and took steps in furtherance of, the kidnapping and extortion of VICTIM. These same articles and information provided to the FBI indicated that M[redacted] knew of and participated in actions taken by J MESSER, as directed by T MESSER, in furtherance of the plot.

8. The handwritten notes found in T MESSER's personal property gave the first details of T MESSER's plot. Specifically, one note had the word "Destroy" written at the top. Later in the same note, it referenced destroying VICTIM's life and giving them an ultimatum. The ultimatum was documented in other notes and contained many conditions that VICTIM must meet including but not limited to: marrying T MESSER; granting T MESSER full power of attorney; signing a document allowing T MESSER to use VICTIM's debit card and money for [redacted] and himself; signing a document asking T MESSER to stay at the house with [redacted]; giving passwords, codes, and PINs for VICTIM's phone, computer, debit card, social media accounts, banking information, etc.; not speaking with any law enforcement.

9. Other notes gave more specifics on T MESSER's plot. For example, the first page of a nine-page note read as follows (with original spelling maintained):



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

> Possible Senerios: 1) Plant a Toy & D under the seat & call 2-3 into 911 Person just road raged & waving a Gun at you & others. Still following them. 2) Plant Toy & D in V in nocked over purse with a puppy & call the police & animal control. 3) Plant Furniture & a Toy & D or lab equipment +/or Supplies Stage break in cut lock & call it in 4) Tranquilizer +/or at home or in a V & put a needle in there arm Toy & D visible in nocked over purse & call it in or have someone there call it in you don't have a phone then disappear. 5) A fake break in at the house & upon the search see Drugs & paraphernilla & etc Toy +/or lab.

The next page of the note began:

> M, to jail for passion of a stolen Toy with obliterated serial numbers, and possession of paraphanelia and weed +/or cole or meth on stand by a V in a storage sheed w/ a lab! All in here name. Note Take polaroids to show as evidence. What is needed to pull this off

10. Under the "needed to pull this off" heading there were 20 bullet points including: "3) SonJ +/or etc Toys +/or Etc." and "17) Drone for survalence [sic] & Drop capability to put the dogs to sleep." At the end of this list, T MESSER wrote "It will be a lady found in her car after work in the parking lot w/ a needle in her arm drugs meth 28 gr on the console and a stolen gun w/ obliterated serial number hanging out of her purse."

11. Based on my training, experience, overall knowledge of this investigation, and the context of the statements, I believe T MESSER sometimes used coded language in these and other writings. Specifically, based on a review of T MESSER's email messages from FCI Sheridan, I know that "SonJ" is how he often refers to his son J MESSER. Additionally, based on my review of the writings, I believe T MESSER's reference to a "toy" in fact was code for a firearm. Further, based on my review of the writing, I believe "D" referenced drugs. Finally, I believe based on the same review that T MESSER's references to "V" are short for vehicle.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

12. As part of the investigation, I have reviewed audio-recorded conversations between T MESSER, J MESSER, and M[redacted]. Based on that review, I have learned that part of the plot involved J MESSER travelling from Washington to VICTIM's home in [redacted] Utah, to take surveillance photographs, steal VICTIM's doorbell camera, and kill her dogs. All of these steps were intended to allow easier access to VICTIM's house after T MESSER's expected release from prison.

13. In a recorded call with SUBJECT DEVICE 1 on March 1, 2026, T MESSER asked J MESSER if he went to Utah that weekend. J MESSER replied that he was on his way there. Later in the call, T MESSER stated "the doorbell thing would have to be done around midnight, one in the mornin'. The animals would have to be done during the day probably. Uh, when they go to work and school." Later T MESSER said, "it's the only way I'm ever gonna have access to the house. Everything can't start happenin' after I get home. It has to start, shit has to start before or I'm gonna for sure get blamed." Later in the conversation, T MESSER told J MESSER, "I just want pictures. You just do the fuckin' doorbell and the fuckin' animals. I just need pictures of the house, the car, wherever the fuck car's parked, where the neighbors are, what's across the street. I need a whole 360 set of pictures." J MESSER said he planned to get the pictures the next day.

14. In a recorded call with SUBJECT DEVICE 1 on March 2, 2026, T MESSER told J MESSER "when you go down there, make sure you don't take your phone." T MESSER also told J MESSER not to leave the thing he knocks off the wall and to make sure he had gloves. Regarding the poisoning of the dogs, T MESSER said,



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"make sure when you do it that you put enough shit in the meat to get it done, so it ain't done half-assed and they suffer." J MESSER and T MESSER then discussed cutting a piece of meat to stuff full of Drano, Red Devil Lye, or rat poison. T MESSER said the best option would be cyanide.

15. In another recorded call with SUBJECT DEVICE 1 on March 2, 2026, J MESSER told T MESSER he was on his way back to Cedar City from getting all the recon pictures for T MESSER. J MESSER said "pretty much" everyone on the block had "those things." Based on the context of the call, I believe J MESSER was likely referring to security cameras. J MESSER said the backyard neighbor also had "those" in their backyard, "which is exactly where you gotta get for the other thing." Again, based on the context of the conversation, I believe J MESSER was likely referring to poisoning the dogs. Because of the neighborhood cameras, it appears that J MESSER neither stole VICTIM's doorbell camera nor poisoned her dogs on this particular trip.

16. In another recorded call between SUBJECT DEVICE 1 and T MESSER on March 11, 2026, J MESSER and T MESSER discussed that J MESSER could not be caught. During that call, T MESSER agreed that J MESSER could not be caught and warned him that he was "talking too much." J MESSER said he was planning on coming to physically visit T MESSER at the BOP facility so they could further discuss. On that same phone call, M[redacted] spoke with T MESSER and discussed an upcoming trip that J MESSER and M[redacted] were planning to make to Utah. BOP records show that J MESSER subsequently visited T MESSER on March 14, the only time anyone physically visited T MESSER in 2026.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

17. Between March 14, 2026, and March 17, 2026, J MESSER along with his [redacted] M[redacted], took another trip to Utah from Washington. In a recorded call with SUBJECT DEVICE 1 on March 14, T MESSER gave J MESSER general directions for travelling south from Washington toward Utah. He also told J MESSER, "when you head in over to the house, I want to go in by way of Toquerville. . . So when you get to Cedar I'm gonna send you the address. Punch it in. It should take you through Toquerville, instead of doubling back wasting 20, 20 something miles each way." Based on my knowledge of the Southern Utah area, I know that Exit 27 off of southbound Interstate 15 between [redacted] leads to Highway 17, leading through Toquerville and La Verkin, [redacted], where VICTIM lived at the time.

18. Later on March 14, T MESSER sent the following message through TRULINCS[1] to both J MESSER and M[redacted]: "SonJ Here is The Address'es 1) [VICTIM's] address : [redacted] Utah 84737 2) [redacted] Utah 84721." Based on this investigation, I know that VICTIM lived [redacted] Utah, 84737, at the time of this message.

19. In another call with SUBJECT DEVICE 1 on March 14, J MESSER told T MESSER that he would buy a cheap burner phone once he got to Nevada and turn his

---

[1] Based on my training and experience, I know TRULINCS to be a BOP messaging service similar to email. It is not necessarily the case that messages sent through TRULINCS, referenced here and elsewhere in this affidavit, involved the SUBJECT DEVICES.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

phone off so it couldn't be tracked. Several hours later, J MESSER told T MESSER he was in Nevada.

20. On the morning of March 15, J MESSER spoke with T MESSER from a phone number ending in 6399. During that call, J MESSER told T MESSER he took care of the "one across the street," then circled back and took care of the "other one." Later, T MESSER asked, "so hers is gone?" J MESSER answered, "Yep, hers and across the street." Based on my investigation, I believe J MESSER and T MESSER were talking about surveillance cameras on VICTIM's home as well as the home across the street. T MESSER also told J MESSER to go around to the street behind VICTIM's house to see if he could see into the back yard and see where the dogs were from there.

21. On March 15, 2026, VICTIM filed a report with the [redacted] Police Department (HPD), stating that their Ring doorbell camera had been stolen that morning. VICTIM provided footage from an outdoor security camera showing an individual in dark clothing walking past the home on the sidewalk at approximately 7:02 am. VICTIM also showed the responding officer footage from the doorbell camera, which did not show anyone in the frame, but a hand covered the camera lens and the screen went black at approximately 7:04 am, when it was apparently removed.

22. On March 16, in a recorded call to the same phone number ending in 6399, J MESSER told T MESSER he "did it" last night. He said, "it's in the backyard, so they should get it when they get let out." T MESSER asked if J MESSER Googled what to use, since J MESSER couldn't find what T MESSER suggested. J MESSER said yes, he used different stuff that would "drop an elephant." J MESSER said he went through the



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

back neighbor's backyard and over the brick wall. He said there were two dog bowls and a big water bowl in the backyard. He said he put it next to the little doghouse in the backyard.

23. J MESSER sent T MESSER the following message through TRULINCS in the early morning of March 17: "Hey, I'm just giving you a friendly update cause I know it takes a few hours for you to get my messages. I'm 168 miles from my house. I'll be there in about three hours. So about 516 my time. If I don't answer your phone call or message cause I died I've been driving all night and all day. Call R[redacted] or call the other phone and I'll tell my mom to answer it." A couple hours later, M[redacted] wrote to T MESSER: "Good morning, we are home, gonna lay down and sleep for a few hours."

24. Later that same morning, T MESSER sent the following message to J MESSER through TRULINCS: "SonJ Ok on Home THANK YOU !!! Send me a list of costs for the trip !!! Car Gas food Burner & card motel room etc Dad." T MESSER sent an almost identical message to M[redacted]: "R[redacted] Ok On Home THANK YOU !!! Send me a list of costs for the trip Car Gas Food Burner & Card Motel Room Etc Respectfully T.M."

25. During the course of the trip between March 14 and March 17, T MESSER also had contact with M[redacted] on SUBJECT DEVICE 2. Prior to the trips, in an email message to T MESSER on February 8, 2026, J MESSER wrote, "[redacted]2472 R[redacted]" which is the call number associated with SUBJECT DEVICE 2. Based on this email, I believe M[redacted] to be the primary user of SUBJECT DEVICE 2. Further, in a recorded call with SUBJECT DEVICE 2 on March 13, T MESSER told M[redacted]:



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"I'm gonna send you down with him tomorrow," and "I need the doorbell across the street removed at the same time." During that same call, M[redacted] stated that she and J MESSER had a disagreement the previous day and she had asked him to leave their shared residence but she nevertheless agreed that she would accompany J MESSER on the planned trip.

26. On March 18, M[redacted] sent the following itemized list of expenses for the trip to T MESSER through TRULINCS: "Car $379 Food $70 Burner & Card & other supplies $95 Motel room $110 Gas $307 So total would be that and I have the dates and bank stuff everything for you on my Venmo account also some recipes couldn't get at late hrs." After T MESSER complained about the expense, M[redacted] wrote: "Yea prices have definitely gone up. Johnathan hasn't gotten his taxes back so I paid for the trip and stuff..." T MESSER replied: "Robin Ok On Money is yours so I will pay you back upon my release !!! T.M."

27. Review of T MESSER's handwritten notes and communication with both J MESSER and M[redacted] indicated that J MESSER may have used a rented vehicle to travel to Utah on two separate occasions. The FBI therefore served Enterprise Car Rental with a subpoena seeking information regarding contracts paid for by J MESSER during the time period of his travel to Utah. The returns indicated that J MESSER rented a Chrysler Pacifica with Maryland license plate number 9GT9614 on March 1, 2026, which was scheduled for return on March 3, 2026. The returns also indicated that J MESSER rented a Nissan Altima with Oregon license plate number 179QLJ on March 13, 2026, which was scheduled for return on March 15, 2026.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

28. The FBI requested License Plate Reader (LPR) data from state and local law enforcement agencies concerning the use of the rental vehicles during both time periods (March 1 through March 3 and March 13 through March 15). The FBI received limited LPR information back because the information was requested after some of the data was routinely purged from the systems of record.

29. However, LPR data provided to the FBI for the Chrysler Pacifica with the Maryland license plate 9GT9614 rented by J MESSER between March 1 and March 3 showed the vehicle traveled from Idaho to Utah. On March 2, 2026, the same vehicle was photographed at or near [redacted], Utah, at or around 5:58 P.M. The image was captured approximately three miles from the VICTIM's residence.

30. Similarly, LPR data provided to the FBI for the Nissan Altima with Oregon license plate 179QLJ that J MESSER rented between March 13 and March 15 showed the vehicle traveled from Idaho to Utah. On March 15, 2026, the same vehicle was photographed at or near [redacted] Utah at or around 6:37 A.M. The image was captured approximately three miles from VICTIM's residence.

31. Additionally, investigators applied for, obtained, and served warrants on T-Mobile requesting cell site location information for SUBJECT DEVICES 1 and 2. Returns from those warrants indicated that J MESSER was the account owner for SUBJECT DEVICE 1, with a listed address of "7305 355th St S, Roy, WA, 98580." As of August 13, 2026, when the records were provided, the account is listed as "active." The returns also indicated that SUBJECT DEVICE 1 interacted with cell towers in Utah between March 2 and March 3 of 2026, as well as on March 16, 2026. The use of these



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

towers is generally consistent with the aforementioned recorded phone calls placed by J MESSER and T MESSER during the trips to Utah.

32. Further examination of the returns indicated that J MESSER was also the owner of SUBJECT DEVICE 2, with the same listed address as for SUBJECT DEVICE 1. As of August 13, 2026, when the records were provided, the account is listed as “active.” The return shows that SUBJECT DEVICE 2 also interacted with cell towers located in Utah between March 2 and March 3, 2026 as well as on March 16, 2026. Payment details for SUBJECT DEVICE 2 indicated that “R[redacted] M[redacted]” used a Mastercard during March of 2026 to make payments towards the account. It is my belief that “R[redacted] M[redacted]” is M[redacted] as established in this warrant, and that the non-standard spelling exhibited in the returns is a typo.

33. Cell tower data returned from all three accounts for the SUBJECT DEVICES indicate that the majority of the towers used to use to complete calls are located within the State of Washington, oftentimes within the vicinity of Roy and Tacoma, Washington. This is consistent with information known to the FBI that indicates that J MESSER and M[redacted] live in Washington, specifically within the vicinity of Roy, Tacoma, or Eatonville, all of which are in Pierce County, Washington. On May 27, 2026, J MESSER had contact with law enforcement in Utah. At that time, he provided an address of 7305 355th Street South, Roy, Washington. This is the same address listed on the account for SUBJECT DEVICES 1 and 2.

34. T MESSER’s BOP records include the phone numbers for both SUBJECT DEVICES on his phone list. According to the records, the phone number for SUBJECT

DEVICE 1 (253-252-0269) was first included on T MESSER's phone list on March 19, 2025, and J MESSER is listed as the associated contact. As of July 15, 2026, the most recent phone call between SUBJECT DEVICE 1 and T MESSER was on May 25, 2026. The phone number for SUBJECT DEVICE 2 ([redacted]-2472) was first included on T MESSER's phone list on February 9, 2026, with J MESSER likewise listed as the associated contact. As of July 15, 2026, the most recent phone call between T MESSER and SUBJECT DEVICE 2 was April 18, 2026.

35. On November 10, 2026, T MESSER and J MESSER were both indicted on charges pertaining to the Subject Offenses. A warrant for J MESSER's arrest was subsequently issued in United States District Court for the District of Utah. On the same day, two Ping warrants were issued in the District of Utah for SUBJECT DEVICE 1 and SUBJECT DEVICE 2.

36. Subsequent locational data reviewed by the FBI for the SUBJECT DEVICES indicated that they were both located in West Chester Township, Ohio. The pings were observed in proximity to the Holiday Inn Express & Suites Cincinnati North located at 7750 Liberty Field Dr, West Chester Township, OH 45069, confirmed through open-source database queries to be an operational hotel. At the behest of the FBI, West Chester Township Police and an FBI Task Force Officer established physical surveillance of the hotel on November 12, 2026. That same day, investigators contacted the hotel's management, who confirmed that a room reserved by a travel management company for M[redacted] was currently occupied by a woman who identified herself to staff as M[redacted] during check-in. J MESSER was listed as an additional occupant in the room.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Security footage captured by hotel cameras and reviewed by investigators also depicted both J MESSER and M[redacted] on hotel property earlier that day. Later that night, investigators observed J MESSER and M[redacted] exit the hotel and enter a vehicle parked nearby with two additional unidentified persons. Officers contacted the vehicle's occupants, identified themselves as law enforcement officers, and arrested J MESSER pursuant to his warrant.

37. During this law enforcement interaction, officers present placed phone calls to the numbers associated with SUBJECT DEVICE 1 and SUBJECT DEVICE 2. Phones with J MESSER and M[redacted] received those phone calls, positively identifying them as SUBJECT DEVICE 1 and SUBJECT DEVICE 2. J MESSER's phone was seized subsequent to his arrest. M[redacted]'s phone was separated from her at the time of J MESSER's arrest. Both devices are currently in the possession of the West Chester Township Police Department. In my training and experience, I know that the SUBJECT DEVICE 1 AND SUBJECT DEVICE 2 have been stored in a matter in which its contents are, to the extent material to this investigation, in substantially the same state as they were when they first came into the possession of law enforcement.

38. During a voluntary interview at the West Chester Township Police Station, M[redacted] provided her phone's passcode to investigators and denied that any evidence would be found within the phone. M[redacted] also denied any knowledge of J MESSER's alleged involvement in a criminal conspiracy. She acknowledged that she and J MESSER had previously traveled to Utah, but denied knowing of or participating in



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

any conspiracy or criminal act when confronted with information obtained by investigators during this investigation.

39. After his arrest, J MESSER was *Mirandized* and interviewed. J MESSER stated that believed T MESSER would be released from prison soon and that he had helped T MESSER in several ways in his plot to potentially harm the VICTIM. J MESSER stated that he drove to Utah with M[redacted], took pictures of cars parked at the VICTIM's house, and stole her doorbell camera. J MESSER provided police with the passcode to his phone and stated that they would find evidence inside of it concerning his involvement in the aforementioned conspiracy, and that he (J MESSER) messaged individuals in an attempt to find "ghost guns" as part of the conspiracy.[2] J MESSER stated that he did not buy any ghost guns, but that he intended to identify individuals who made or possessed ghost guns in order to pass their information on to T MESSER once he was out of prison. J MESSER also stated that he and M[redacted] bought T MESSER clothing, to include a ski mask and leather gloves. J MESSER acknowledged that he knowingly took part in activities that might make it possible for T MESSER to harm the VICTIM. J MESSER stated that he lied to his father about poisoning the VICTIM's dogs, and that he would not hurt animals.

40. J MESSER told investigators that he had several conversations with M[redacted] in which he detailed his involvement with a conspiracy to surveil the

[2] In my training and experience, I know the term "ghost gun" refers to firearms that are composed partially or in their entirety of parts fabricated by individuals who wish to create a weapon that is not tracked on a registry and that is free of all serial numbers. These firearms are often used by criminals in an attempt to minimize their attribution to violent crimes.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

VICTIM's residence, steal the VICTIM's doorbell camera, and provide assistance to T MESSER in a conspiracy to harm the VICTIM. J MESSER believed that M[redacted] was intimately aware of the plot involving himself and T MESSER. However, J MESSER said that while M[redacted] was aware of the conspiracy, she did not participate in any of the actions that he took. M[redacted] did not observe J MESSER take photos of the VICTIM's residence, nor did she see him steal the doorbell camera. J MESSER knew that T MESSER was capable of harming the VICTIM [redacted] and recalled seeing T MESSER physically abuse J MESSER's [redacted], as well as threaten to kill her with a firearm.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

41. As described above and in Attachment B, this application seeks permission to search for evidence and/or instrumentalities that might be found in the SUBJECT DEVICES, in whatever form they are found. One form in which the evidence and/or instrumentalities might be found is data stored on digital devices[3] such as a wireless communication device, as well as electronic storage media.[4] Thus, the warrant applied for would authorize the seizure of digital devices and other electronic storage media and,

---

[3] "Digital device" includes any device capable of processing and/or storing data in electronic form. Examples include central processing units, computer servers, and drives intended for removable media, as well as wireless communication devices such as mobile or cellular telephones and telephone paging devices.

[4] Electronic storage media is any physical object upon which electronically stored information can be recorded. Examples include hard disks, flash memory, CD-ROMs, SIM cards, and other magnetic or optical media.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

potentially, the copying of electronically stored information from digital devices or other electronic storage media, all under Rule 41(e)(2)(B).

42. *Probable cause.* I believe digital devices or other electronic storage media are being used to communicate about the SUBJECT OFFENSES and to take and store photographs of VICTIM's residence. I also believe digital devices or other electronic storage media will provide evidence relating to the physical location of the SUBJECT DEVICES at times relevant to the ongoing investigation into the SUBJECT OFFENSES. There is, therefore, probable cause to believe that evidence and/or instrumentalities of the crimes of 18 U.S.C. § 2261A (Interstate Stalking), and 18 U.S.C. § 371 (Conspiracy) exists and will be found on the SUBJECT DEVICES, and that the SUBJECT DEVICES, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be preserved (and consequently also then recovered) for months or even years after they have been downloaded onto a storage medium, deleted, or accessed or viewed via the Internet. Electronic files downloaded to a digital device or other electronic storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a digital device or other electronic storage media, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the digital device or other electronic storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

43. I know that when an individual uses a digital device to conspire to kidnap and stalk another individual across state lines, the individual's digital device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The digital device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The digital device is



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

also likely to be a storage medium for evidence of crime. A digital device used as an instrumentality of a crime may contain: data that is evidence of how the digital device was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense. In this investigation, because T MESSER has been incarcerated throughout the entire period, he has had to nearly exclusively rely on communicating with J MESSER and M[redacted] through digital devices. Specifically, with one exception, all of the communications between T MESSER and J MESSER, as well as T MESSER and M[redacted], appear to have either been over the phone or over email/chat messages. The single exception is noted above when J MESSER had a physical visit with T MESSER on March 14, 2026. As such, it is reasonable to believe that phones used by or belonging to J MESSER and M[redacted] are instrumentalities of the SUBJECT OFFENSES and will also contain evidence of the same.

44. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how digital devices or other electronic storage media were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any digital devices or other electronic storage media located on the SUBJECT DEVICES because:

a. Stored data can provide evidence of a file that was once on the digital device or other electronic storage media but has since been deleted or edited, or



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the history of connections to other digital devices, the attachment of peripherals, the attachment of external storage media, and the times the digital device or other electronic storage media was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. As explained herein, information stored within a digital device and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

accessed, thus inculpating or exculpating the computer owner and/or others with direct physical access to the computer. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example,



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a digital device or other electronic storage media works can, after examining this forensic evidence in its proper context, draw conclusions about how the digital device or other electronic storage media were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a digital device or other electronic storage media that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, digital evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a digital device or other electronic storage media was used, the purpose of its use, who used it, and when,



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

sometimes it is necessary to establish that a particular thing is not present. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

## REQUEST FOR AUTHORITY TO CONDUCT OFF-SITE SEARCH OF DIGITAL DEVICES

45. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of premises for information that might be stored on digital devices or other electronic storage media often requires the seizure of the physical items and later off-site review consistent with the warrant. In lieu of removing all of these items from the premises, it is sometimes possible to make an image copy of the data on the digital devices or other electronic storage media, onsite. Generally speaking, imaging is the taking of a complete electronic picture of the device's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the item, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. *The time required for an examination*. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine the respective digital device and/or electronic storage media to obtain evidence. Computer hard drives, digital devices and electronic storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. *Technical requirements*. Digital devices or other electronic storage media can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises. However, taking the items off-site and reviewing them in a controlled environment will allow examination with the proper tools and knowledge.

c. *Variety of forms of electronic media*. Records sought under this warrant could be stored in a variety of electronic storage media formats and on a variety of digital devices that may require off-site reviewing with specialized forensic tools.

46. Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for will permit seizing, imaging,



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

or otherwise copying digital devices or other electronic storage media that reasonably appear capable of containing some or all of the data or items that fall within the scope of Attachment B to this Affidavit, and will specifically authorize a later review of the media or information consistent with the warrant. The latter review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

47. Manner of execution. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

48. Based on the foregoing, I believe there is probable cause that evidence and instrumentalities of the commission of the Subject Offenses are located on the SUBJECT DEVICES, as more fully described in Attachments A-1 to A-2 to this Affidavit. I therefore request that the court issue a warrant authorizing the seizure and search of the SUBJECT DEVICES for the items more fully described in Attachment B hereto, incorporated herein by reference, and the seizure of any such items found therein.

49. The affidavit and application are being presented by reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

_____________________________________
Johnathan Larson, Affiant
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me by reliable electronic means, specifically, FaceTime video conference, in accordance with the requirements of Fed. R. Crim. P. 4.1, on November 13, 2026.

Stephanie K Bowman
_____________________________________
Hon. Stephanie K. Bowman
United States Magistrate Judge

# ATTACHMENT A-2

The property to be searched is a cellular telephone assigned call number, [redacted] 2472, with listed subscriber Johnathan Messer, ("SUBJECT DEVICE 2"), whose wireless service provider is T-Mobile SUBJECT DEVICE 2 is currently in law enforcement custody located at the West Chester Township Police Station, which is located in the Southern District of Ohio.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT B

## ITEMS TO BE SEIZED

1. All items and all records, in whatever form, including paper, any other physical form, and any electronic form, that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2261A (Interstate Stalking), and 18 U.S.C. § 371 (Conspiracy) (hereinafter, the SUBJECT OFFENSES), those violations involving Terry MESSER, Johnathan MESSER, and R[redacted] M[redacted] and occurring between January 1, 2026, and present, that is:

a. Records, information, and data relating to the ownership, use, and location of the device during, immediately preceding, and following the trips taken to Utah between approximately March 1 and March 3 of 2026, as well as approximately March 13 and March 17 of 2026, as part of the SUBJECT OFFENSES;

b. Records and information relating to the identity or location of the individuals involved in violating the SUBJECT OFFENSES;

c. For the period of January 1, 2026, through the present, records of communication concerning the SUBJECT OFFENSES by T MESSER, J MESSER, and M[redacted], specifically preparations, plans, coordination, and efforts to conceal the acts necessary to commit the SUBJECT OFFENSES;

d. For the period of January 1, 2026, through the present, photographs relating to the SUBJECT OFFENSES;



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

e. For the period of January 1, 2026, through the present, evidence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

f. For the period of January 1, 2026, through the present, evidence of the lack of such malicious software; evidence indicating how and when the device were accessed or used to determine the chronological context of phone access, use, and events relating to the crime(s) under investigation and to the computer user;

g. For the period of January 1, 2026, through the present, evidence of programs (and associated data) that are designed to eliminate data from the device;

h. For the period of January 1, 2026, through the present, evidence indicating the device user's knowledge and/or intent as it relates to the SUBJECT OFFENSES;

i. For the period of January 1, 2026, through the present, evidence of the times the device was used; passwords, encryption keys, and other access devices that may be necessary to access the device; and

j. evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence;



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

k. contextual information necessary to understand the evidence described in this attachment.

2. Records and information on computers, routers, modems, and network equipment used to connect computers to the Internet that constitute evidence, instrumentalities, or fruits of the commission of the SUBJECT OFFENSES, including

a. Records of Internet Protocol addresses used;

b. Records of Internet activity, including firewall logs, caches, browser history and cookies; “bookmarked” or “favorite” web pages, search items that the user entered into any Internet search engine, and records of user-typed web addresses relating to the SUBJECT OFFENSES.

THE SEIZURE OF DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA AND/OR THEIR COMPONENTS AS SET FORTH HEREIN IS SPECIFICALLY AUTHORIZED BY THIS SEARCH WARRANT, NOT ONLY TO THE EXTENT THAT SUCH DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA CONSTITUTE INSTRUMENTALITIES OF THE CRIMINAL ACTIVITY DESCRIBED ABOVE, BUT ALSO FOR THE PURPOSE OF THE CONDUCTING OFF-SITE EXAMINATIONS OF THEIR CONTENTS FOR EVIDENCE, INSTRUMENTALITIES, OR FRUITS OF THE AFOREMENTIONED CRIMES.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means ❒ Original ❒ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
SUBJECT DEVICE 2 LOCATED AT WEST CHESTER TOWNSHIP POLICE DEPARTMENT, WEST CHESTER, OHIO, FURTHER DESCRIBED IN ATTACHMENT A-2.

Case No. **1:26-mj-00928**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the Southern District of Ohio *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before November 27, 2026 *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Hon. Stephanie K. Bowman.
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for ____ days *(not to exceed 30)* ❒ until, the facts justifying, the later specific date of ____________.

Date and time issued: 11/13/2026 4:18pm

Stephanie K Bowman
*Judge's signature*

City and state: Cincinnati, Ohio

Stephanie K. Bowman, United States Magistrate Judge
*Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ____________________

____________________________________
*Executing officer's signature*

____________________________________
*Printed name and title*

## ATTACHMENT A-2

The property to be searched is a cellular telephone assigned call number, 360-353-2472, with listed subscriber Johnathan Messer, ("SUBJECT DEVICE 2"), whose wireless service provider is T-Mobile SUBJECT DEVICE 2 is currently in law enforcement custody located at the West Chester Township Police Station, which is located in the Southern District of Ohio.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT B

## ITEMS TO BE SEIZED

1. All items and all records, in whatever form, including paper, any other physical form, and any electronic form, that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2261A (Interstate Stalking), and 18 U.S.C. § 371 (Conspiracy) (hereinafter, the SUBJECT OFFENSES), those violations involving Terry MESSER, Johnathan MESSER, and R[redacted] M[redacted] and occurring between January 1, 2026, and present, that is:

a. Records, information, and data relating to the ownership, use, and location of the device during, immediately preceding, and following the trips taken to Utah between approximately March 1 and March 3 of 2026, as well as approximately March 13 and March 17 of 2026, as part of the SUBJECT OFFENSES;

b. Records and information relating to the identity or location of the individuals involved in violating the SUBJECT OFFENSES;

c. For the period of January 1, 2026, through the present, records of communication concerning the SUBJECT OFFENSES by T MESSER, J MESSER, and M[redacted], specifically preparations, plans, coordination, and efforts to conceal the acts necessary to commit the SUBJECT OFFENSES;

d. For the period of January 1, 2026, through the present, photographs relating to the SUBJECT OFFENSES;



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

e. For the period of January 1, 2026, through the present, evidence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

f. For the period of January 1, 2026, through the present, evidence of the lack of such malicious software; evidence indicating how and when the device were accessed or used to determine the chronological context of phone access, use, and events relating to the crime(s) under investigation and to the computer user;

g. For the period of January 1, 2026, through the present, evidence of programs (and associated data) that are designed to eliminate data from the device;

h. For the period of January 1, 2026, through the present, evidence indicating the device user's knowledge and/or intent as it relates to the SUBJECT OFFENSES;

i. For the period of January 1, 2026, through the present, evidence of the times the device was used; passwords, encryption keys, and other access devices that may be necessary to access the device; and

j. evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence;



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

k. contextual information necessary to understand the evidence described in this attachment.

2. Records and information on computers, routers, modems, and network equipment used to connect computers to the Internet that constitute evidence, instrumentalities, or fruits of the commission of the SUBJECT OFFENSES, including

a. Records of Internet Protocol addresses used;

b. Records of Internet activity, including firewall logs, caches, browser history and cookies; "bookmarked" or "favorite" web pages, search items that the user entered into any Internet search engine, and records of user-typed web addresses relating to the SUBJECT OFFENSES.

THE SEIZURE OF DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA AND/OR THEIR COMPONENTS AS SET FORTH HEREIN IS SPECIFICALLY AUTHORIZED BY THIS SEARCH WARRANT, NOT ONLY TO THE EXTENT THAT SUCH DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA CONSTITUTE INSTRUMENTALITIES OF THE CRIMINAL ACTIVITY DESCRIBED ABOVE, BUT ALSO FOR THE PURPOSE OF THE CONDUCTING OFF-SITE EXAMINATIONS OF THEIR CONTENTS FOR EVIDENCE, INSTRUMENTALITIES, OR FRUITS OF THE AFOREMENTIONED CRIMES.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970